OMARI PATTON, ) CR 2-93
)
vs. ) CV 10-19
)
UNITED STATES OF AMERICA. )

## OPINION AND ORDER

## SYNOPSIS

In this criminal matter, Defendant was charged with several counts related to a drug conspiracy, initially involving twenty-four defendants, and ranging over a period of several years. A jury convicted Defendant on the conspiracy count, and twenty-seven substantive counts. He was sentenced on July 11, 2005 to a term of 360 months, followed by five years of supervised release. On September 5, 2008, the Court of Appeals affirmed the conviction.

Presently before the Court is Defendant's Motion pursuant to 28 U.S.C. § 2255, seeking to vacate, correct, or set aside his sentence on grounds of ineffective assistance of counsel.[1] Defendant has also filed a notice of appeal regarding this Court's denial of extensions of time and discovery. This is an interlocutory appeal, which does not deprive this Court of jurisdiction. E.g., Bratek v. Beyond Juice, LLC, No. 4-4491, 2005 U.S. Dist. LEXIS 33352 (E.D. Pa. Dec. 15, 2005). For the following reasons, the Motion will be denied.

## I. APPLICABLE STANDARDS

---

[1]Defendant Patton's arguments are similar, but not identical to, those raised by his co-Defendant Lee. My discussion of the issues are likewise similar as to each Defendant.

## I. Section 2255

A district court need not hold an evidentiary hearing on a Section 2255 motion if the motion, files, and records show conclusively that the defendant is not entitled to relief. United States v. Ritter, 93 Fed. Appx. 402, 2004 U.S. App. Lexis 5692, at *4 (3d Cir. 2004). "A hearing is not required on...claims...which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted in the record." Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989). "[W]e do not need to accept as true allegations that are "unsupported by specifics [or] wholly incredible in the face of the record." United States v. Estrada, 849 F.2d 1304, 1307 (10th Cir. 1988).

"In deciding whether to hold a hearing, a trial court judge may draw upon his own personal knowledge and recollection of the trial when considering the factual allegations of a § 2255 motion that relate to events that occurred in the judge's presence." United States v. Bell, No. 4-212, 2010 U.S. Dist. LEXIS 42947, at *10 (W.D. Pa. May 3, 2010). A hearing need not be held, unless the motion "raises detailed and specific factual allegations whose resolution requires information outside of the record or the judge's personal knowledge or recollection...." United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir. 1992). Under these principles, a hearing is unnecessary in this case, and I will dispose of the Motion on the record.

Relief is available under Section 2255 only under exceptional circumstances, when the claimed errors of law are "a fundamental defect which

inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L.Ed. 2d 417 (1962).

Finally, a pro se pleading is held to less stringent standards than pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 s. ct. 285, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Thus, a pro se habeas petition should be construed liberally. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998). I will consider Defendant's Motion according to these standards.

### B. Ineffective Assistance of Counsel

In the context of an ineffective assistance of counsel claim, a court should be "highly deferential" when evaluating an attorney's conduct; there is a "strong presumption" that the attorney's performance was reasonable. Strickland v. Washington, 466 U.S. 668, 689 (1984). "It is... only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Gray, 878 F. 2d 702, 711 (3d Cir. 1989).

To demonstrate that either trial or appellate counsel was ineffective, a defendant must show that counsel's performance fell below "the wide range of professionally competent assistance" and also that the deficient conduct prejudiced defendant. See Strickland, 466 U.S. at 687. Counsel's conduct must be assessed according to the facts of the particular case, viewed as of the time of

3

counsel's conduct. Id. at 689.

Under the prejudice prong, the pertinent question is "whether there is a reasonable probability that, absent the errors," the result would have been different. Id. at 695; see also Gray, 878 F.2d at 709-13. Speculation as to "whether a different . . . strategy might have been more successful" is not enough. Lockhart v. Fretwell, 506 U.S. 364, 113 S. Ct. 838, 843-44, 122 L. Ed. 2d 180 (1993). The prejudice prong of Strickland rests on "whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair," or strips the defendant of a "substantive or procedural right to which the law entitles him." Id. at 844. A court need not consider both components of Strickland, if there is an insufficient showing on one or the other. Strickland, 466 U.S. at 697.

## II. DEFENDANT'S MOTION

### A. Sixth Amendment - Right to Public Trial

Defendant contends that counsel was ineffective when he failed to object to the closing of the courtroom to the public. The transcription reflects that court convened at 10:45 AM. Defendant avers that the Court "ordered Court Reporter to turn off the record," then instructed the Courtroom Deputy to in turn instruct the U.S. Marshals to "close the courtroom doors." Then, he avers, the Court went back on the record and discussed other issues. In contrast, counsel for the Government asserts that she does not recall such activity occurring, either on or off the record.

Defendant points, in particular, to a portion of the proceeding that apparently occurred prior to all counsel being present, during which a "discussion was held off the record." The Court then called in the jury pool. Defendant states that he noticed approximately ninety-six people enter the courtroom. Once the voir dire began, Defendant avers that he asked his counsel why his family was not in the courtroom, and counsel responded that the courtroom was too small to fit the jurors and the public at the same time. Defendant noticed a U.S. Marshal standing in front of the courtroom entrance.

Defendant also submits the affidavit of his brother, who testifies that he arrived at the courthouse at 10:00 A.M. on November 8, 2004, and "was not permitted to enter the court-room by an officer of the court." After waiting outside the courtroom for several hours, Defendant's brother and "a few others" were "not allowed to enter." Defendant further avers that he left the courtroom for the lunch recess at noon, and saw his family members and friends, and some other members of the public. He returned to the courtroom an hour and fifteen minutes later, and noticed that "no one from the public was allowed to enter the Courtroom by the U.S. Marshals services...." Court adjourned at 5:05 PM.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial . . . ." U.S. Const. amend. VI. This guarantee "'has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every

criminal trial is subject to contemporaneous review in the forum of public

opinion is an effective restraint on possible abuse of judicial power.'" Gannett

Co., Inc. v. DePasquale, 443 U.S. 368, 380, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979)

(quoting In re Oliver, 333 U.S. 257, 270, 68 S. Ct. 499, 92 L. Ed. 682 (1948)).

　　　Initially, I note that Defendant did not object to the alleged exclusion of his

family at jury selection, and therefore may be either deemed to have waived this

issue, or be required to establish cause and prejudice for the failure to raise it on

appeal.  See United States v. Frady, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816

(1982);  United States v. Hitt, 473 F.3d 146, 155 (5th Cir. 2007).  Ineffective

assistance of counsel may constitute "cause" for a failure to object to a

constitutional defect.  See, e.g., Siehl v. Grace, 561 F. 3d 189, 194 n. 3 (3d Cir. 2009).

For purposes of procedural default, prejudice may be presumed for denial of the

right to a public trial.  Waller v. Georgia, 467 U.S. 39, 50 n. 9, 104 S. Ct. 2210, 81 L.

Ed. 2d 31 (1984).[2]  Absent ineffective assistance of counsel, and assuming that a

Sixth Amendment violation occurred, therefore, the procedural bar would apply.

　　　Accordingly, first – again, assuming arguendo that a predicate

constitutional violation occurred -- I address whether counsel was ineffective in

failing to object to the non-presence of Defendant's family in the courtroom.   At

most, accepted as true, Defendant's factual averments give rise to a temporary

---

[2]There is conflicting authority, however, regarding whether prejudice is presumed in such a
situation for an ineffective assistance claim.  Compare Owens v. United States, 483 F. 3d 48 (1st Cir.
2007), with Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006).  I need not resolve that issue here, because
Defendant's ineffective assistance claim fails at the first prong of Strickland.  I do, however, take
note that Defendant has not demonstrated actual prejudice, as contemplated by Strickland,
resulting from the alleged exclusion of his family members during voir dire.

or partial closure.[3]  Thus, it is important to note that courts remain split

regarding how and whether courts are required to justify or consider

alternatives to such closures.  Angiano v. Scribner, No. 08-56577, 2010 U.S. App.

LEXIS 2991, *3 (9th Cir. Feb. 16, 2010) (discussing split).

Moreover, at the time of the subject proceeding, it was arguably unsettled

whether the Sixth Amendment public trial right attached to voir dire.[4]  It is

widely acknowledged that counsel is not ineffective when governing law was

unsettled at the time of the allegedly unreasonable decision. E.g., Tuy Pham v.

Quarterman, H-08-3465, 2009 U.S. Dist. LEXIS 33582, at *21 (S.D. Tex. Apr. 21, 2009);

Sullivan v. Wainwright, 695 F.2d 1306, 1309 (11th Cir.1983).  Under the

circumstances present here, a failure to object to the absence of Defendant's

---

[3]At the time that Defendant observed his family and friends waiting outside, and at the time his brother alleges that he was first denied entry – at 9:30 and 10:00 AM, respectively, court had not yet convened.  They were, at that time, not denied entry into any proceeding at all.  I am unable to assess the conclusory, general allegations of later exclusion, the source or mechanism of which is unidentified, "a few hours later."

[4]At that time, the Court of Appeals for the Fourth Circuit observed that it was "not certain that the Public Trial Clause [of the Sixth Amendment applied] to voir dire proceedings." Woodson v. Hutchinson, 52 Fed. Appx. 195, 198 (4th Cir. 2002).  The voir dire in this case predated Presley v. Georgia, __ U.S. __, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010), in which the Supreme Court conclusively extended the Sixth Amendment right to a public trial to voir dire proceedings.  Previously, the Court had extended the First Amendment right to a public trial – as opposed to the similar Sixth Amendment right -- to voir dire.  See Presley, 130 S. Ct. at 723-24 (discussing Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).  Similarly, the Sixth Amendment right to a public trial, and the requirement that a trial judge make certain findings before closing the courtroom, had been extended beyond trial, to a suppression hearing.  Id. (discussing Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).  Moreover, some, but not all, appellate courts had so extended the right to voir dire.  This Court has found that Presley is not retroactive on collateral review.  Julian v. Pennsylvania, No. 09-1710, 2010 U.S. Dist. LEXIS 43004, at **10-11 (W.D. Pa. May 3, 2010).  These principles, as well as those enunciated in Angiano, undermine Defendant's contention that this Court erred when it failed to justify the closure or consider alternatives.

family members did not constitute ineffective assistance of counsel.

Moreover, space considerations – to which, according to Defendant, counsel pointed -- may be appropriate reasons for limiting entry into a courtroom. E.g., Woodson v. Hutchinson, 52 Fed. Appx. 195, 198 (4th Cir. 2002). First, as a practical matter, "[t]he theoretical right of all members of the public to actually be present at a trial is limited in practice by space and time constraints." United States v. Pizzonia, 415 F. Supp. 2d 186 (E.D.N.Y. 2006). "A public trial implies only that the court must be open to those who wish to come, sit in the available seats, conduct themselves with decorum, and observe the trial process." Estes v. Texas, 381 U.S. 532, 589, 85 S. Ct. 1628, 14 L. Ed. 2d 543 (1965) (emphasis added). "[T]he Sixth Amendment does not guarantee access to unlimited numbers; the fact that a particular individual is not admitted does not constitute a violation of the Constitution." Gibbons v. Savage, 555 F.3d 112, 116 (2d Cir. N.Y. 2009). In light of the large venire pool in this case,[5] counsel's alleged approach to this issue was not facially unreasonable, or below applicable standards of competence.

I note, too, that defense counsel's interest in protecting a defendant's right to a completely public trial may "give way to other concerns, such as maximizing the accused's chance of obtaining a favorable jury composition."

---

[5]As an aside, jury office records show that sixty potential jurors were called into the courtroom in this case for voir dire. The United States General Services Administration advises that the courtroom's spectator benches accommodate approximately thirty-two people, with some room for additional people in the rear area. Defendant observed that "over approximately" ninety-six potential jurors were brought into the courtroom. Given the large differential between the number of jurors that Defendant viewed and that reflected by jury office records, one might surmise that Defendant observed non-juror members of the public.

Horton v. Allen, 370 F.3d 75, 82-83 (1st Cir. 2004).  The decision to acquiesce in

closed voir dire – had such a decision been made – may carry strategic or tactical

advantages, and such a decision cannot be viewed as per se falling below

applicable standards. See id.

Defendant's petition is further complicated by the dearth of evidence that

an unconstitutional closure in fact occurred.  "The denial of a defendant's Sixth

Amendment right to a public trial requires some affirmative act by the trial court

meant to exclude persons from the courtroom." United States v. Shryock,

United States v. Al-Smadi, 15 F.3d 153, 155 (10th Cir. 1994) (citations omitted);

Perez v. Cockrell, 77 Fed. Appx. 201, 204 (5th Cir. 2003).   Defendant's contentions

are not supported by the transcript of the voir dire proceeding, which does not

suggest that I directed that the public, or any portion thereof, be excluded from

the proceeding, or that the United States Marshals close the doors.  I add that it is

not, and has never been, this Court's practice to categorically exclude the public

from voir dire proceedings, much less to do so off the record.   While the

transcript reflects an off-the-record discussion, the surrounding context contains

not the slightest  suggestion that its subject related, in any way, to courtroom

access.[6]   The transcript is not only consistent with my general practice, but with

---

[6]The off-the-record discussion was immediately preceded by a discussion of whether the jury room would be used for individual voir dire, and the defense's proposed jury questionnaire. Immediately after the off-the-record notation, I stated, "I want to go on the record now that all the lawyers are here.  Just to put on the record before we begin, the jurors are going to be called over now, but counsel has previously agreed [about peremptory challenges, and the proposed questionnaire]."  Consistent with my recollection and regular practice, that statement summarized the off-the-record discussion.

my personal knowledge and recollection of the proceedings.

Moreover, Defendant first observed his friends and family outside the courtroom, and his brother first attempted to enter, prior to the challenged off-the-record closure order, and prior to the start of the proceedings.  The sum total of pertinent evidence subsequent to alleged closure order, and during a proceeding from which one might have been excluded, is that Defendant's brother and a "few others" "weren't allowed to enter the courtroom" after "several hours," and that Defendant saw his friends and family outside, rather than inside, the courtroom.  These facts simply do not, and cannot, establish a Sixth Amendment violation.

As a final matter, even if Defendant had demonstrated that the courtroom was closed to the public for the duration of voir dire, and that the closing was unjustifiable, or that counsel had been ineffective for failing to object, the extraordinary remedy of vacating the conviction would be unwarranted.  This is true whether the "closure" in this case was too trivial to violate the Sixth Amendment in the first place, or whether it violated the Sixth Amendment but was too trivial to justify a new trial.  See United States v. Ivester, 316 F. 3d 955, 960 (9th Cir. 2003);[7] , 555 F.3d at 120-21.  In the former instance, there is no violation

---

[7]Ivester applied the "wise and widely-accepted" rule that trivial closures do not violate the constitution, and found that a closure of jury questioning was trivial.  Under that rule, assessing the triviality of a closure involves an inquiry into whether the closure involved the following values: ensuring a fair trial, reminding prosecutor and judge of their responsibility to the accused and the importance of their functions; encouraging witnesses to come forward; and discouraging perjury. Ivester, 316 F.3d at 959-60.  "[T]hese four values are not implicated by routine jury administrative matters that have no bearing on Ivester's ultimate guilt or innocence." Id. at 960.  In the present case, the facts, as discussed in the body of the Opinion supra, do not implicate any of these values.

to remedy; in the latter, the "remedy should be appropriate to the violation." Waller, 467 U.S. at 49.

Accepting Defendant's factual contentions for the time being, it is plain that any "closure" did not affect the outcome or the fairness of his lengthy trial, or affect any of the considerations underlying the Sixth Amendment's public trial guarantee. Defendant does not suggest, for example, that I closed the courtroom in order to deliberately enforce secrecy, in order to be free from the safeguards of public scrutiny; likewise, he does not suggest that public scrutiny would have affected the result or deportment of the proceedings. See Levine v. United States, 362 U.S.610, 619, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960). Moreover, there is no allegation that his family was repeatedly precluded from entering, was denied entry throughout the entire proceeding, or that any non-family member of the public was precluded from entering.

Accepting as true Defendant's contention that the audience as limited at voir dire proceedings to attorneys, judge, defendant, and prospective jurors for a single day, under the circumstances present here, would not warrant the remedy of overturning a conviction or granting a new trial. See Gibbons, 555 F.3d at 121. I do not minimize the importance of a public trial, of familial presence and support, or of voir dire proceedings. I find only that had the voir dire in fact been improperly closed to those family members identified in this particular case, it is manifest that a new trial would not be in the public interest.

## B. Warrantless Arrest

Next, I address Defendant's claim that trial counsel was ineffective for failing to challenge his warrantless arrest, and appellate counsel failed to properly raise the same issue. A Section 2255 Motion is not to be used to relitigate issues decided adversely on direct appeal. United States v. Williams, No. 9-5154, 2010 U.S. Dist. LEXIS 40912, at *12 (E.D. Pa. Apr. 26, 2010). In this case, the Court of Appeals determined that the facts were sufficient to constitute probable cause that Defendant "had committed or was committing an offense involving the drugs and the gun," and that his arrest did not violate the Fourth Amendment. To that extent, the habeas petition is inappropriate for consideration.

Although Defendant points to some purported confusion in the record, I have carefully reviewed all pertinent materials of record, and find that neither trial nor appellate counsel erred in their treatment of Defendant's warrantless arrest. "Appellate counsel does not have a duty to advance frivolous arguments or even every non-frivolous argument that could have been made; however, appellate counsel is ineffective if counsel 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" United States v. Askew, No. 9-64, 2010 U.S. Dist. LEXIS 4516, at*8-9 (W.D. Pa. 2010). There was no ineffective assistance of counsel in this case, with respect to Defendant's warrantless arrest.

**C. Vehicle Search**

Next, I address Defendant's argument that counsel was ineffective in his motion to suppress evidence obtained after a search of Defendant's vehicle, in which federal agents found heroin, crack cocaine, and a firearm. He contends, in particular, that counsel failed to have Defendant testify that he was the owner of the vehicle, and could challenge the search, and failed to challenge misrepresentations in warrant applications. Defendant contends that counsel made the "wrong legal argument."

Again, the Court of Appeals rejected Defendant's challenge on similar grounds, when it affirmed this Court's previous ruling that he did not have standing to challenge the search of the vehicle. The evidence showed that the vehicle was registered to another co-defendant, and Defendant, at the time of the incident, advised agents that he did not know whose vehicle it was. "[A] defendant cannot assert a reasonable expectation of privacy in a vehicle if he 'has rendered all of the normal incidents of ownership, including title and possession, to another and disavows any knowledge of or interest in it.'" United States v. Villarreal, 963 F.2d 770, 775 (5th Cir. Tex. 1992). As this suggests, ownership alone is not determinative of standing to challenge the legality of a search. United States v. Vizcarra, 835 F. Supp. 1160, 1162 (D. Ariz. 2993). Moreover, as the Government correctly contends, there were several other

grounds on which the vehicle search was potentially justified.[8]   Defendant also

contends that counsel failed to challenge misrepresentations, in the application

for the seizure warrant, regarding the VIN number of the vehicle.   Given the

facts of record, and several independent possibilities for validating the search,

there is no reasonable probability that the suppression motion would have been

granted, even if counsel had argued, via his client's testimony, that he owned the

vehicle, or that information in the affidavit was inaccurate.  Instead, counsel

acted within applicable parameters of competence, and his conduct did not

prejudice Defendant.

### D. Electronic Wiretap Evidence

Next, I address Defendant's contention that counsel failed to properly

articulate arguments regarding a motion to suppress wiretap evidence.

Specifically, he contends that counsel should have argued that the Government

failed to comply with sealing and minimization requirements.[9]

### 1.  Sealing

18 U.S.C. § 2518(8)(a) requires that immediately upon expiration of an order

authorizing interception and recording of certain communications, the

---

[8]For example, the automobile exception to the warrant requirement permits a warrantless search in the presence of probable cause.  United States v. Ross, 456 U.S. 798, 809 (1982).  Defendant does not challenge probable cause to search the vehicle.  In addition, agents were in the process of executing a search warrant at 1413 Glenn Avenue.  A search warrant for the house may justify a search of a vehicle nearby.  See, e.g., United States v. Freeman, 685 F.2d 942, 955 (5th Cir. 1982).

[9]The Government observes that neither of the telephones that were wiretapped were primarily used by Defendant, or were located in his residence.  That he may not have had standing to challenge the entirety of the wiretaps affects an analysis of counsel's conduct in dealing with the wiretap.  I note, too, to the extent that Defendant challenges the necessity of the wiretap, the Court of Appeals has rejected that argument.

recordings must be sealed under the direction of the judge who issued the order. The statute contains an exclusionary remedy for noncompliance, which provides that "the presence of the seal … or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents" of the recordings, or evidence derived therefrom. United States v. Ojeda Rios, 495 U.S. 257, 260, 110 S. Ct. 1845, 109 L. Ed. 2d 224 (1990).

The recordings in this case were sealed by Order of Court on April 22, 2002 and April 4, 2002, for a period of ten years.   The miscellaneous dockets nearing those Orders remain under seal.   Because the sealing requirements were met, this argument provides no grounds for habeas relief.

### 2.  Minimization

Next, I address Defendant's arguments that counsel was ineffective for failing to argue that the Government did not minimize the wiretap evidence.   He contends that agents intercepted over 1,000 calls, without regard for the innocence of the interceptee.   Defendant does not aver that non-pertinent calls were used at trial, and does not identify any particular conversations intercepted, or used at trial, which might illustrate a failure to minimize.

The pertinent statute provides, in part, that "[e]very order and extension thereof shall contain a provision that the authorization to intercept shall be executed . . . in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."   18 U.S.C. § 2518(5). This Section "does not prohibit the interception of all non-pertinent

15

conversations; rather it requires the government to conduct the wiretap so as to minimize the interception of such calls." United States v. Armocida, 515 F.2d 29, 42 (3d Cir. 1974). The minimization standard is "reasonableness," and is to be assessed on a case-by-case basis. Id.

The standard is met if "on the whole," agents have shown a high regard for privacy rights, and have done "all they reasonably could to avoid unnecessary intrusion." Id. A court must consider, inter alia, the nature and scope of the criminal enterprise under investigation; the Government's reasonable expectation as to the character of, and the parties to, the conversations; and the degree of supervision by the authorizing judge. Id. at 44-45. As the Court of Appeals has observed, "agents monitoring an intercept cannot reasonably be expected to distinguish in advance those calls which first appear innocent but which later develop into conversations involving criminal activities." Id. at 45.

This case involved an investigation into a relatively large-scale criminal enterprise. The Government asserts that minimization instructions were explained to the monitoring agents, and posted at the site. Some of the telephone calls were encrypted, contained coded language, were accomplished by direct connect inaccessible by wiretap, and many were under two minutes. An Assistant United States Attorney supervised the wire, and provided ten-day reports to the supervising judge, detailing the calls minimized. The agents maintained monitoring logs. The affidavits submitted in support of the wiretap orders proffered information supporting a relatively widespread conspiracy.

16

Moreover, Defendant's assertions of failure to minimize are conclusory. "The mere assertion, even if found true, that certain non-pertinent conversations were intercepted in full does not necessarily render the surveillance violative of the minimization requirements of the statute." Id. at 44. Under the circumstances, there are no grounds for concluding that the "reasonableness" standard was not met; the record indicates otherwise. Moreover, there are no grounds for concluding that counsel was ineffective for failing to raise minimization, or that Defendant suffered prejudice as a result.

**E. Sentencing**

Next, Defendant contends that his sentencing counsel was ineffective, for failing to object and argue to the Court that the Government did not present scientific evidence that the cocaine at issue was, in fact, crack cocaine, as opposed to cocaine base. In the first instance, scientific evidence is not necessarily required to establish the identity of an illegal substance; testimony of cooperating witnesses or law enforcement, for example, may suffice. Cf., e.g., United States v. March, 19 Fed. Appx. 445, 448 (8th Cir. 2001); United States v. Linton, 235 F.3d 328, 330 (7th Cir. 2000).

Contrary to Defendant's suggestion, the Court did not make a sua sponte finding regarding the substance at issue. There was, for example, identifying testimony from a government agent. Additionally, Defendant does not contend that there was any other basis for challenging the conclusion that the substance

was crack cocaine.[10]   Defendant further contends that counsel should have

argued that he could not have foreseen that co-Defendants handled more than

ten kilograms of heroin.   Counsel did, however, argue at sentencing that ten

kilograms of heroin should not be attributed to Defendant, and that Defendant

was a minor participant.  Under the circumstances, sentencing counsel's

performance was not deficient, and even if it had been, there is no reasonable

probability that the outcome would have been different but for counsel's

performance.

**E. Severance**

Finally, I address Defendant's argument that counsel failed to comply with

Defendant's request that he move for a severance of his trial from those of his

alleged co-conspirator.  Defendant argues that counsel for co-Defendant Lee

pointed out, in closing, that tape after tape referred to Patton, and not Lee.

Our Court of Appeals, on direct appeal, has already rejected Defendant

Lee's contentions that the joint trial caused him prejudice, and that the jury was

unable to compartmentalize the evidence.  As the Court of Appeals noted,

prejudice is not necessarily demonstrated because "some evidence adduced is

more damaging to one defendant than others."  To the extent that these

conclusions may be deemed applicable to Patton, as well, a Section 2255 Motion

cannot be used to relitigate matters already decided on direct appeal.  United

---

[10]I note, too, that the terms "crack" and "cocaine base" tend to be used interchangeably. See, e.g., United States v. Bryant, No. 10-1411, 2010 U.S. App. LEXIS 15622, at *1 (3d Cir. July 28, 2010); United States v. Davis, No. 7-4715, 2010 U.S. App. LEXIS 13971, at *1 (3d Cir. July 8, 2010).

States v. Pelullo, 305 Fed. Appx. 823, 827 (3d Cir. 2009); United States v. DeRewal, 10 F.3d 100, 105 (3d Cir. 1993).

Even reconsidered, however, Defendant's contentions do not amount to ineffective assistance of counsel. "The general rule is that co-conspirators indicted together are normally tried together." United States v. Rankin, No. 92-5578, 1992 U.S. Dist. LEXIS 17555, at *6 (D.N.J. Oct. 23, 1992). Accordingly, joint trials for co-conspirators are strongly preferred. United States v. Weiner, No. 8-614-02, 2009 U.S. Dist. LEXIS 56932, at **7-8 (E.D. Pa. July 2, 2009). To overcome the presumption of reasonableness, Defendant must show that the failure to move for severance was unsound trial strategy. United States v. Pungitore, 965 F. Supp. 666, 676 (E.D. Pa. 1997). "The decision not to seek a severance generally falls within the range of reasonable trial strategy." United States v. Odiodio, No. 99-236, 2005 U.S. Dist. LEXIS 18046, at *58 (N.D. Tex. Aug. 24, 2005). In this case, there are no grounds for finding that counsel's decision fell outside that range. Similarly, there is no reasonable probability that the outcome would have been different had counsel sought severance, and the alleged prejudice is not of the type contemplated by Strickland's standard. In particular, given the weight of the evidence presented, there is no reasonable probability that the outcome would have been different had counsel objected to the statement by Lee's counsel, in closing, that the tapes often related to this Defendant. Defendant is not entitled to habeas relief on these grounds.

**III. CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." In this case, for the reasons stated in the foregoing Opinion, Defendant has not made such a showing. Therefore, a certificate of appealability will not issue in any respect, regarding the issues decided herein.

**CONCLUSION**

In sum, Defendant has not demonstrated that this case involves exceptional circumstances, or that the claimed errors are a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure. Accordingly, Defendant has not made a substantial showing of the denial of any constitutional right. Defendant has not demonstrated entitlement to habeas relief, and no certificate of appealability shall issue. An appropriate Order follows.

**ORDER**

AND NOW, this 11th day of August, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Section 2255 Motion [Docket No. 869] is DENIED. No certificate of appealability shall issue.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States District Judge